IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HOWARD LANGFORD, ) | |
| ) | |
| Plaintiff, ) | 8:04CV172 |
| ) | |
| v. ) | |
| ) | MEMORANDUM AND ORDER |
| CITY OF OMAHA, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on plaintiff's motion for partial summary judgment (Filing No. 40), defendant's cross-motion for summary judgment (Filing No. 41) and plaintiff's motion in limine (Filing No. 45). Plaintiff has asserted claims for employment discrimination under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000 *et seq.,* and the state law claim of intentional infliction of emotional distress.

The court has carefully reviewed the pleadings, the briefs, and the evidentiary materials filed by the parties. For the reasons explained below, the court finds and concludes that summary judgment should be granted in part and denied in part.

**FACTUAL BACKGROUND**

Plaintiff Howard Langford, a black male, began working for defendant, the City of Omaha, in 1996 as a part-time stationary engineer at the Papio Creek Wastewater Treatment Plant. In May 2000, Langford complained to the City of Omaha's Human Relations Department about his inability to get a job at the Omaha Civic Auditorium due to what he perceived to be discrimination in hiring. Caryl Robinson, the employee that Langford spoke to in the Human Relations Department, stated that Langford never

formalized his complaint and therefore no file was created, no investigation was undertaken, and Robinson never spoke to anyone in the Parks and Recreation Department about Langford's complaints. Filing No. 43-2, Affidavit of Caryl Robinson (Robinson Aff.) at ¶¶ 5 and 6.

In August 2000, the City hired Langford as a full-time stationary engineer at the Civic Auditorium. After the City hired him for this position, Langford requested that he continue to receive level "C" pay because he was a first-grade engineer and had worked for the defendant for almost five years. The City explained that the position began at the lower Level "A" pay, and payment above the minimum is only allowed in some circumstances, at the discretion of the department director. Specifically, a department director will approve payment above the minimum where there is a lack of available candidates for that position or in recognition for exceptional qualifications. Langford never received approval to receive a higher pay rate.

When the City hired Langford at the Civic Auditorium in August of 2000, he was placed on six-month probationary status. Langford, however, remained on probationary status for around two and a half years while Langford's co-workers, white males employed as stationary engineers, were on probationary status for six months. In May of 2002, Langford submitted a written request to Larry Lahaie, Civic Auditorium Manager, asking that the City remove him from probationary status. Langford's paychecks indicate that he remained on probationary status until on or around February 2003. The City states that it kept Langford on probationary status as a result of a clerical error.

In May of 2002, in his letter to Mr. Lahaie, Langford also expressed his interest in a management position at the Civic Auditorium. Specifically, Langford stated that he was

aware that the City Maintenance Supervisor at the Civic Auditorium, Brook Bench, was promoted leaving his position open, and he was interested in being considered for the position. The City did not post and test for this position, instead, the City provisionally appointed Robert Madison, a white male, to the position in September 2002. Robert Madison filled this position for around two years and was then returned to his previous position of Maintenance Repairer I on or around July 1, 2004. The City explains that pursuant to Omaha City Ordinance 23-237 it is allowed to make provisional appointments without going through the process of posting and testing for the position if there is no existing list for the position. Furthermore, Bench filed an affidavit stating that Langford did not have the requisite qualifications for the position. Langford challenges this statement arguing that he had the supervisory and planning experience necessary for the position. Langford also complained that around June 2002, James Madison, a white male without an engineering certificate, was hired as "ice plant manager" and that the City did not post and test for this position. Neither Langford nor the City addressed this allegation in their motions for Summary Judgment.

On August 14, 2002, Langford timely filed a Charge of Discrimination with the Nebraska Equal Opportunity Commission ("NEOC"). In his charge Langford alleged that the City retaliated against him because he complained of discrimination to the Omaha Human Relations Department in 2000. Langford alleged that in retaliation for his complaint the City discriminated against him by keeping him on probation for almost two and a half years when he was only subject to a six-month probationary period and similarly situated white employees were taken off probationary status after six months, and that the City failed to post management positions, and instead, promoted less qualified white individuals

into those positions. On September 26, 2003, the NEOC issued a Commission Determination stating that it found sufficient evidence to support a reasonable cause finding that discrimination has occurred as alleged.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Harder v. ACandS*, 179 F.3d 609, 611 (8th Cir. 1999). "In making this determination, the function of the court is not to weigh evidence and make credibility determinations, or to attempt to determine the truth of the matter, but is, rather, solely, to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The court must "look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997) (quoting *Anderson*, 477 U.S. at 248).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact. *See Tenbarge v. Ames Taping Tool Sys., Inc.*, 128 F.3d 656, 657-58 (8th Cir. 1997). Accordingly, a party moving for summary judgment must "set forth in the brief in support of the motion for summary judgment a separate statement of material facts as to which the

moving party contends there is no genuine issue to be tried and that entitle the movnig party to judgment as a matter of law." NECivR 56.1(a).

In the face of a properly supported motion, "[t]he burden then shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial.'" *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998) (quoting Fed. R. Civ. P. 56(e)). A nonmoving party may not rest upon the mere allegations or denials of its pleadings, but rather, must set forth specific facts, supported by affidavits or other proper evidence, showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 153 F.3d 919, 922 (8th Cir. 1998). In this respect, the nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts;' . . . [i]t must show there is sufficient evidence to support a jury verdict in [its] favor." *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998). Accordingly, the nonmoving party must "include in its brief a concise response to the moving party's statement of material facts. The response shall address each numbered paragraph in the movant's statement, and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony . . . " NECivR 56.1(b).

## DISCUSSION

**Title VII Claims**

Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42

U.S.C. § 2000e-2(a)(1). Summary judgment may be entered in a Title VII action "if any essential element of the prima facie case is not supported by specific facts sufficient to raise a genuine issue for trial." *Brower v. Runyon*, 178 F.3d 1002, 1005 (8th Cir. 1999).

**Prima Facie Case**

A prima facie case of discrimination requires the plaintiff to establish that he 1) is a member of a protected class; 2) was qualified to perform his job; 3) suffered an adverse employment action; and 4) was treated differently than similarly situated people. *See Schoffstall v. Henderson*, 223 F.3d 818, 825 (8th Cir. 2000) (*citing Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999)). If a plaintiff establishes a prima facie case, then the burden shifts to the employer to produce evidence of a legitimate nondiscriminatory reason for its action. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993). If the employer succeeds in this burden of production, then the burden shifts back to the plaintiff to prove that the employer's proffered reason was a pretext for intentional discrimination. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. at 143. The ultimate burden of persuasion remains with the plaintiff throughout the case.

1. Probationary Status

Plaintiff alleges that defendant violated Title VII of the Civil Rights Act of 1964, as amended, by intentionally discriminating against him by keeping him on probationary status for approximately two and a half years while similarly situated white males were only kept on probationary status for six months. As a result of the discrimination, plaintiff claims he has suffered and continues to suffer undue hardship, emotional distress, embarrassment, humiliation, inconvenience and is entitled to exemplary and punitive damages. Defendant argues that plaintiff remained on probationary status due to a clerical error and that plaintiff

did not suffer an adverse employment action due to his probationary status. Both parties seek summary judgment on this issue.

Plaintiff has failed to establish a prima facie case on this claim of discrimination because he has not proven the third prong of the test, that he suffered any adverse employment action due to the City's failure to remove him from probationary status after six months. Therefore, the court will grant defendant's motion for summary judgment on this issue.

### 2. Discrimination in Pay

Next, defendant seeks summary judgment on plaintiff's claim that defendant violated Title VII of the Civil Rights Act of 1964, as amended, by intentionally discriminating against plaintiff by paying him at a pay rate lower than his qualifications warranted. Defendant argues that summary judgment should be granted in its favor because plaintiff failed to exhaust his administrative remedies with respect to this claim. The City contends that plaintiff did not raise this issue in his complaint to the NEOC and has brought it for the first time in this civil lawsuit.

Administrative remedies are exhausted by the timely filing of a charge and the receipt of a right-to-sue letter. *See Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994). The completion of that two-step process constitutes exhaustion only as to those allegations set forth in the NEOC charge and those claims that are reasonably related to such allegations. *See id.* ("A plaintiff will be deemed to have exhausted administrative remedies as to allegations contained in a judicial complaint that are like or reasonably related to the substance of charges timely brought before the EEOC"). A plaintiff may not make a conclusory charge of discrimination and then file suit on whatever

facts or legal theory the plaintiff may decide upon. *Faibisch v. University of Minnesota*, 304 F.3d 797, 803 (8th Cir. 2002).

In plaintiff's charge filed with the NEOC he alleged that defendant retaliated against him for reporting what he perceived to be acts of discrimination to the City of Omaha Office of Human Relations. In the charge plaintiff clearly alleges that as a result of his report to the Omaha Office of Human Relations the City discriminated against him by keeping him on probationary status longer than six months and failing to post management positions prior to hiring. However, plaintiff did not make an allegation that defendant discriminated against him by paying him at a pay rate lower than his qualifications warranted. Therefore, because plaintiff failed to include this allegation in his administrative charge, and based on the face of the NEOC Commission Determination the NEOC did not address this issue, he failed to exhaust his administrative remedies on this claim and the court will grant summary judgment in favor of defendant.

### 3. Job Postings

Defendant also seeks summary judgment on plaintiff's claim that it violated Title VII of the Civil Rights Act of 1964, as amended, by intentionally discriminating against plaintiff by hiring individuals for management positions without posting and testing for open positions. Plaintiff argues that two management positions became open while he was employed at the Civic Auditorium, and that without posting the positions and requesting applications, the City filled both positions with white men with similar qualifications to plaintiff. Defendant argues that under Omaha City Ordinance 23-237 it is allowed to fill these positions with provisional appointments if there is no existing list for the position and that plaintiff did not have the requisite qualifications for the position.

The court has concluded that with respect to this claim there are genuine issues of material facts in dispute for trial. Therefore, both motions for summary judgment on this claim are denied.

4. Retaliation

Finally, both parties seek summary judgment on plaintiff's claim of retaliation. Plaintiff alleges that the defendant discriminated against him by failing to post supervisory jobs and keeping him on probationary status in retaliation for plaintiff's complaint of discrimination to the City of Omaha's Office of Human Relations.[1]

To establish a *prima facie* case of retaliation under Title VII, the plaintiff must show that he "engaged in protected conduct, that he suffered an adverse employment action, and that the adverse action was causally linked to the protected conduct." *Griffith v. City of Des Moines*, 387 F.3d 733, 735 (8th Cir. 2004). "'An adverse employment action is exhibited by a *material* employment disadvantage, such as a change in salary, benefits, or responsibilities." *Meyers v. Starke*, 420 F.3d 738 (8th Cir. 2005) (quoting *Bradley v. Widnall*, 232 F.3d 626, 632 (8th Cir.2000) (emphasis in original)).

With respect to this issue the court has concluded that there are genuine issues of material fact for trial on the defendant's alleged act of retaliating against plaintiff by failing to post and test for supervisory positions, therefore, summary judgment is denied. If at trial

---

[1] In plaintiff's response to defendant's Motion for Summary Judgment he argues that he has established a prima facie case for retaliation and then discusses the City's failure to hire him for a position at the Civic Auditorium in May 2000. This incident may have been the basis for plaintiff's complaint to the Office of Human Relations, but it was not raised as an issue in his charge with the NEOC, and does not establish a prima facie case for retaliation. Therefore, this court will not consider the facts surrounding the May 2000 incident as a new claim of discrimination. The court will review whether plaintiff suffered an adverse employment action as a result of his report of discrimination to the City of Omaha Office of Human Relations.

there is no evidence to support the plaintiff's claim defendant can move to dismiss this issue at that time.

**Intentional Infliction of Emotional Distress**

To constitute intentional infliction of emotional distress, a plaintiff must show (1) that there has been intentional or reckless conduct; (2) that the conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community; and (3) that the conduct caused emotional distress so severe that no reasonable person should be expected to endure it. *Gall v. Great W. Sugar Co.* 219 Neb. 354, 363 N.W.2d 373, 377 (1985).

Based on the high standard of proof required to establish the second element of this claim, that the conduct was outrageous, and the uncontroverted facts in this case, the court has concluded that as a matter of law defendant cannot establish that defendant's conduct was so extreme in degree as to go beyond all possible bounds of decency. Therefore, the court grants summary judgment in favor of defendant.

**Motion in Limine**

The allegations in plaintiff's motion in limine are vague and there was no response to this motion by defendant. Therefore, at this time the court will deny plaintiff's motion, however, the motion is subject to reassertion at the time of trial.

THEREFORE, IT IS ORDERED:

1. Plaintiff's motion for partial summary judgment (Filing No. 40) is denied.

2. Defendant's motion for summary judgment (Filing No. 41) is granted in part and denied in part. The motion is granted with respect to plaintiff's claims of intentional

discrimination due to pay and probationary status, and plaintiff's claim of intentional infliction of emotional distress. The issues that remain for trial are (1) plaintiff's claim of retaliation, and (2) plaintiff's claim of discrimination based on the City's failure to post management positions.

3. Defendant's motion in limine (Filing No. 45) is denied but is subject to reassertion at the time of trial.

DATED this 10th day of March, 2006.

BY THE COURT:


s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge